IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MARJORIE LAMB as next friend of )
A.B. and J.B. and R.B.; and MARJORIE LAMB as )
Administratrix of the Estate of THOMAS BURNS, )
)
       Plaintiffs, )
)
    v. )    C.A. No. 08-324 (GMS)
)
STANLEY TAYLOR and )
CORRECTIONAL MEDICAL SERVICES, *et al.*, )
)
       Defendants. )

## MEMORANDUM

## I. INTRODUCTION

The plaintiff, Marjorie Lamb ("Lamb"), filed this lawsuit against several defendants

pursuant to 42 U.S.C. § 1983 and Delaware state law regarding decedent Thomas Burns

("Burns"). Burns committed suicide while incarcerated at the Howard R. Young Correctional

Institution ("HRYCI"). Lamb named Stanley Taylor ("Taylor"), Commissioner of the Delaware

Department of Correction ("DOC"), as a defendant and alleges violations of Burns'

constitutional rights. More specifically, the plaintiff alleges violations of civil rights under color

of state law for cruel and unusual punishment (Count I) and for failure to train and/or

maintenance of wrongful customs, practices, and policies (Count III). Presently before the court

is Taylor's motion for summary judgment. This motion has been fully briefed. For the reasons

that follow, the court will grant Taylor's motion for summary judgment.

## II. BACKGROUND

### A. Hospitalization Prior to Incarceration

Prior to incarceration at HRYCI, Burns was prosecuted and convicted by the State of Delaware for forging judicial documents relating to a proceeding in Family Court. (D.I. 1, ¶¶ 17-18.) After he failed to appear in court for sentencing, Burns became subject to a warrant for his arrest. (Id., ¶ 19.)

Subsequent to the issuance of the arrest warrant, on May 18, 2006, Burns was found unresponsive at home by his sister. (D.I. 66 at A-3; D.I. 67 at B-63.) Burns was taken to Christiana Hospital by ambulance, and the medic advised that Burns appeared to have ingested morphine pills and alcohol. (Id.) Burns was admitted to the hospital with a "principal diagnosis" of "[r]espiratory failure" and "secondary diagnoses" of "[a]spiration pneumonia, accidental alcohol, [sic] and drug overdose, and supraventricular tachycardia." (D.I. 66 at A-1.)

On May 24, 2006, Burns was discharged from the hospital. (Id.) The discharge summary reflects that Burns "was seen by Dr. Villars of Psychiatry." (Id.) Dr. Villars "felt that the patient did not have a purposeful suicide attempts [sic]" and "that he did have substance abuse and possibly depression." (Id.) The discharge summary also states that Burns was not willing to talk about the doctor's findings and declined treatment. (Id.)

On that same day, due to outstanding arrest warrants, Burns was taken into custody by the Delaware State Police and transported to the New Castle County Sheriff's Office. (D.I. 66 at A-5 – A-6.) Burns was later admitted to HRYCI. (D.I. 66 at A-8.) At all times relevant to this litigation, Correctional Medical Services ("CMS") was the corporation responsible for the performance of medical services within HRYCI pursuant to a contract with the DOC. (D.I. 1, ¶ 8.)

2

## B. Medical Care as an Inmate at HRYCI

Upon intake at HRYCI on May 24, 2006, Burns underwent an initial screening by CMS personnel.  (D.I. 66 at A-10 – A-15.)  During the screening, Burns denied any history of mental illness and any history of suicide attempts.  (Id.)  Thereafter Burns was placed in the general population.  (Id. at A-15.)

Four days later, on May 28, 2006, CMS personnel brought Burns to the infirmary after receiving a phone call from the Delaware chapter of the National Alliance for Mental Illness ("NAMI-DE").  (D.I. 66 at A-16.)  NAMI-DE reported that Burns had recently attempted suicide.  (Id.)  A CMS nurse, Beth Klepacki, notified the CMS Mental Health Director, Deborah Muscarella ("Muscarella"), about the call from NAMI-DE.  (D.I. 67 at B-18.)  By telephone, Muscarella ordered the staff to place Burns under Psychiatric Close Observation ("PCO") Level II.[1]  (Id.; D.I. 66 at A-16.)

The following day, on May 29, 2006, Muscarella examined Burns and performed a comprehensive mental health evaluation.  (D.I. 66 at A-23 – A-24.)  After completing the evaluation, Muscarella lowered Burns' PCO status to Level III.[2]  (Id.)

The next morning, on May 30, 2006, Burns was found dead in his cell.  (D.I. 66 at A-31.)  Burns "hung himself from an exhaust vent with strips of a bed sheet."  (Id.)  A medical examiner characterized the death as a suicide.  (Id. at A-32.)

---

[1] There are three PCO levels.  (D.I. 67 at B-95.)  Level I is for inmates with high risk, and they have "1:1 observation and are confined in a cell wearing only a suicide gown."  (Id.)  Level II is for inmates with moderate risk, and "they are confined in a cell wearing only a suicide gown."  (Id.)  Here, "there is no longer 1:1 observation," rather "the inmate is monitored on a staggered interval no greater than 15 minutes."  (D.I. 67 at B-95 – B-96.)  In both Levels I and II, the inmates do not have "bed linens, personal items, writing utensils, plastic bags or eating utensils."  (Id.)  Finally, Level III is for inmates with low risk, and "they are confined in a cell wearing a department of correction uniform."  (D.I. 67 at B-96.)  Here, "an inmate is allowed to have bed linens and personal items."  (Id.)  Like Level II, the inmate is monitored in intervals of no greater than 15 minutes.  (Id.)
[2] See footnote 1.

## III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) permits a party to move for summary judgment on specified claims or defenses, in whole or in part.[3] Fed. R. Civ. P. 56(a). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact." (Id.) The moving party bears the burden of proving that no genuine dispute as to any material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). After the moving party has carried its initial burden, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 586-87. More specifically, "to defeat the [movant's] motion, the plaintiff 'must introduce more than a scintilla of evidence showing that there is a genuine issue for trial; she must introduce evidence from which a rational finder of fact could find in her favor.'" *Woloszyn v. County of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005) (quoting *Colburn v. Upper Darby Township*, 946 F.2d 1017, 1020 (3d Cir. 1991)). A party must adequately support an assertion that a fact is or is not genuinely disputed, by "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c). The court must "view all underlying facts and all reasonable inferences therefrom in the light most favorable" to the nonmoving party. *Pennsylvania Coal Ass'n v. Babbit*, 63 F.3d 231, 236 (3d Cir. 1995). A genuine dispute of material fact exists "if

---

[3] The legal standard reflects the revised language used in the 2010 amendments of the Federal Rules of Civil Procedure. See USCS Fed R. Civ. P. 56.

the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law identifies which

facts are material. *Id.* Therefore, "only disputes over facts that might affect the outcome of the

suit under the governing law will properly preclude the entry of summary judgment." *Id.*

## IV. DISCUSSION

Defendant Taylor contends that summary judgment is appropriate. Taylor moves for

summary judgment on the ground that in his capacity as Commissioner of the DOC "he had no

personal involvement in the suicide of Thomas Burns." (D.I. 65 at 4.) Taylor also asserts that

"the record is free of any dispute that the decedent was being seen and cared for by medical

personnel in the infirmary." (Id. at 5.) Taylor supports his position by providing record

evidence as reflected in the fact section above. Taylor also cites to the unpublished opinion,

*Albert v. Yost*, 2011 WL 2321471 (3d Cir. 2011), which holds "a prison administrator who

delegates medical care decisions to medical professionals does not have the requisite subjective

intent to harm the plaintiff or consciousness of a risk of serious harm."[4] *Id.* at *4.

Plaintiff Lamb contends that summary judgment is precluded because she has introduced

sufficient evidence to support either one, or both, of her claims against Taylor. (D.I. 70 at 14.)

Lamb argues that there is sufficient evidence to support a civil rights claim against Taylor for

violation of the Eighth Amendment prohibition of cruel and unusual punishment under 42 U.S.C.

§ 1983 (Count I) and/or his failure to train and/or maintenance of wrongful customs, practices,

and policies (Count III). (Id.) Lamb supports her position by attempting to distinguish *Yost*[5] and

---

[4] The holding in *Yost* is based on a published opinion. *See Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004) ("[A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference.").

[5] Given that *Yost* is not a precedential case, the court will not discuss it at length. However, it is important to note that Lamb's attempt to distinguish the case reduces to mere attorney argument. Lamb provides neither legal support nor evidentiary support for her contentions. See D.I. 70 at 19-20.

focusing heavily on inapposite cases such as *Natale v. Camden County Correctional Facility*, 318 F.3d 575 (3d Cir. 2003). *Natale* is not relevant to this summary judgment inquiry because in that case the plaintiffs were challenging the district court's grant of summary judgment in favor of defendant Prison Health Services ("PHS"). *See Natale*, 318 F.3d at 577. *Natale's* pertince in this action was with regard to the summary judgment motion filed by defendant CMS because its employees are classified as prison officials.[6] *Natale* does not, however, provide support against the contention that Lamb cannot meet the legal standard applicable to Taylor in his capacity as a prison administrator.

It is well established that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009). Indeed, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007) (internal citations omitted). "'Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence.'" *Lewis v. Williams*, 2011 U.S. Dist. LEXIS 62756, *30 (D. Del. June 10, 2011) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)). The "plaintiff must plausibly plead and eventually prove not only that the official's subordinates violated the Constitution, but that the official by virtue of his own conduct and state of mind did so as well." *Id.* at *31 (citations omitted). At this stage in the litigation, to defeat Taylor's motion for summary judgment, Lamb "'must introduce more than a scintilla of evidence showing that there is a genuine issue for trial; she must introduce evidence from which a rational finder of fact could find in her favor.'" *Woloszyn*, 396 F.3d at 319.

---

[6] See the court's order denying CMS' motion for summary judgment (D.I. 78).

Lamb asserts that Taylor had knowledge and was "well aware of purported defects in the suicide prevention system in place." (D.I. 70 at 17.) Lamb emphasizes that *Barkes v. First Correction Medical Inc.*, 06-cv-104 (LPS), was filed against Taylor in the U.S. District Court for the District of Delaware in 2006, and it "detailed defects in the DOC system that led to Mr. Barkes's suicide." (Id.) The mere fact that *Barkes* was filed is not sufficient to meet Lamb's evidentiary burden. Moreover, the evidence that Lamb argues is present in the *Barkes* case, is not in the record in this action. Lamb does reference record evidence from Muscarella who testified that "the medical contractor [CMS] used their own policies and procedures. It was only afterwards that . . . now we follow DOC policies and procedures." (D.I. 70 at 11-12; D.I. 67, Ex. 1 at B-27.) Despite this purported evidence in support of Lamb's position, it is not sufficient to demonstrate Taylor's personal involvement as to the asserted claims. Thus, a reasonable jury could not find in favor of Lamb as to her claims against Taylor. Therefore, summary judgment is appropriate due to insufficient evidence regarding Taylor's personal involvement.

## V. CONCLUSION

For the above reasons, the court will grant Taylor's motion for summary judgment. An appropriate order will be issued.

Dated: September ___, 2011

_____
CHIEF, UNITED STATED DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MARJORIE LAMB as next friend of | ) | |
| A.B. and J.B. and R.B.; and MARJORIE LAMB as | ) | |
| Administratrix of the Estate of THOMAS BURNS, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 08-324 (GMS) |
| | ) | |
| STANLEY TAYLOR and | ) | |
| CORRECTIONAL MEDICAL SERVICES, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

WHEREAS, on July 1, 2011, defendant Stanley Taylor ("Taylor") filed a motion for summary judgment (D.I. 64);

WHEREAS, on July 20, 2011, plaintiff Marjorie Lamb filed a response to Taylor's motion for summary judgment (D.I. 70);

WHEREAS, on August 1, 2011, Taylor filed a reply in support of his motion (D.I. 73);

WHEREAS, the court having considered this pending motion, the response and reply thereto, and the applicable law, concludes that the motion should be granted;

IT IS HEREBY ORDERED that Taylor's motion for summary judgment (D.I. 64) is GRANTED and the clerk is directed to enter JUDGMENT in favor of defendant Taylor and against the plaintiff.[1]

CHIEF, UNITED STATES DISTRICT JUDGE

---

[1] There is no evidence of record showing defendant Taylor's personal involvement as to the asserted claims. Inasmuch as there are no genuine issues of fact, a reasonable jury could not find in favor of the plaintiff as to these claims. For the above reasons, the court will grant Taylor's motion for summary judgment due to a lack of evidence on personal involvement.